# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| TIFFANY McCRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:20-cv-00391** |
| | ) | **Judge Aleta A. Trauger** |
| UNIVERSAL HEALTH SERVICES | ) | |
| d/b/a HERMITAGE HALL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

The magistrate judge has issued a Report and Recommendation ("R&R") (Doc. No. 11), recommending that the Motion to Dismiss and Compel Arbitration (Doc. No. 4) filed by defendant Universal Health Services d/b/a Hermitage Hall ("Hermitage Hall") be granted, that this case be dismissed without prejudice, and that the plaintiff's Request for Motion to Amend Complaint (Doc. No. 9), seeking to properly identify the defendant,[1] be denied as moot. Now before the court are the plaintiff's Objection to Enforcement of Arbitration and Objection to Dismissal of Case (Doc. No. 13), Request for Additional Time to Respond to Defendant (Doc. No. 15), and second document entitled Objection to Enforcement of Arbitration and Objection to Dismissal of Case (Doc. No. 17), filed without leave of court. For the reasons set forth herein, the court will overrule the plaintiff's Objections, accept the R&R, and grant the defendant's

---

[1] The defendant asserts that the correct name of the plaintiff's former employer is Tennessee Clinical School, LLC d/b/a Hermitage Hall. According to the Declaration of Michelle Carson, Associate General Counsel – Litigation for UHS of Delaware, Inc., Hermitage Hall is a single member limited liability company whose sole member is Universal Health Services, Inc. (Doc. No. 1-2 ¶ 4.)

Motion to Dismiss and Compel Arbitration.

## I.     BACKGROUND

Plaintiff Tiffany McCray, proceeding *pro se*, originally filed this lawsuit in the Circuit Court for Davidson County, Tennessee. Defendant Hermitage Hall was served on April 6, 2020; it removed the case to this court on the basis of both federal question jurisdiction and diversity of citizenship on May 6, 2020. (Doc. No. 1.) Shortly afterwards, the defendant filed its Motion to Dismiss and Compel Arbitration. (Doc. No. 4.) Attached to that motion is a copy of the Alternative Resolution for Conflicts Agreement ("ARC Agreement" or "Agreement") signed by McCray on December 14, 2015. (Doc. No. 4-2.) In its motion, Hermitage Hall asserts that the ARC Agreement constitutes a binding arbitration agreement, that it covers not only Hermitage Hall but its affiliates as well, including its parent, Universal Health Services, Inc., and that it expressly covers the employment-related claims asserted in the plaintiff's Complaint. (*See* Memorandum in Support of Motion to Dismiss and Compel Arbitration, Doc. No. 4-1.)

The plaintiff filed a brief Response, in which she states: "I acknowledge the Alternative Resolution for Conflicts agreement with Hermitage Hall. . . . I am in agreement with the conditions provided that arbitration must proceed as a valid agreement to arbitrate exists and the dispute falls within the scope of the agreement." (Doc. No. 8, at 1.)

The motion was referred to the magistrate judge for a recommended disposition. (Doc. No. 6.) On June 10, 2020, the magistrate judge issued the R&R. (Doc. No. 11.) Based on both the plaintiff's acknowledgment that a binding arbitration agreement existed and an independent conclusion that the claims in the Complaint fall within the scope of the ARC Agreement, the magistrate judge recommends that the defendant's Motion to Dismiss and Compel Arbitration be granted. Further, finding no basis for staying the case, the magistrate judge recommends that the case be dismissed without prejudice, pending resolution of the arbitration proceedings.

The plaintiff, despite having essentially conceded that a valid and binding arbitration exists and that her claims fall within its scope, filed her timely Objections to the R&R (Doc. No. 13), raising numerous defenses that she did not raise in response to the Motion to Dismiss and Compel Arbitration. Hermitage Hall has filed a "Reply" to the plaintiff's Objections, asserting that the plaintiff's new arguments were waived by her failure to raise them in response to the Motion to Dismiss and Compel Arbitration and that, regardless, the arguments are without merit. (Doc. No. 14.)

Almost two weeks after the filing of the defendant's response, the plaintiff submitted a "Request for Additional Time to Respond," seeking 45 days to "gather evidence in support of contractual fraud." (Doc. No. 15.) The defendant responded in opposition to that motion (Doc. No. 16), asserting that, despite her *pro se* status, the plaintiff is subject to the Federal Rules of Civil Procedure and, accordingly, is not entitled to file a reply to the defendant's response to her Objections. The defendant further posited that, even if the court were inclined to permit the filing of a reply, the request for an additional forty-five days within which to do so was categorically unreasonable. Not waiting for a ruling on this request, on July 16, 2020, the plaintiff filed a second document entitled Objection to Enforcement of Arbitration and Objection to Dismissal of Case (Doc. No. 17), to which are attached several exhibits. The court construes this filing as either supplemental objections or a reply to the defendant's response to the plaintiff's initial Objections.

## II.    STANDARD OF REVIEW

The standard of review applicable to a party's objections to a magistrate judge's ruling depends upon whether the objections pertain to a dispositive or non-dispositive matter. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Under § 636(b)(1)(A), a magistrate judge is not authorized to "determin[e]" matters that are "dispositive of a claim or defense of a party." *Vogel*

*v. U.S. Office Prods. Co.*, 258 F.3d 509, 514 (6th Cir. 2001) (quoting Fed. R. Civ. P. 72). The list of dispositive motions contained in § 636(b)(1)(A) includes motions "for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.SC. § 636(b)(1)(A). This list does not expressly include a motion to dismiss on the basis of an arbitration agreement, but the court finds that such a motion effectively seeks either an injunction or a dismissal, and, as such, qualifies as a dispositive motion. Alternatively, it is "functionally equivalent to those [motions] listed in § 636(b)(1)(A)" and therefore is "dispositive" on that basis as well. *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 515 (6th Cir. 2001); *accord Curatola v. TitleMax of Tenn., Inc.*, No. 1:16-cv-01263-JDB-egb, 2018 WL 2728037, at * (W.D. Tenn. June 6, 2018) (noting that courts are split on the question but finding that a motion to stay a class action and to compel individual arbitration seeks injunctive relief and is therefore dispositive for purposes of 28 U.S.C. § 636(b)(1)(A)).

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B) & (C). An objection is "properly" made if it is sufficiently specific to "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Special Learning, Inc. v. Step by Step Acad., Inc.*,

751 F. App'x 816, 819 (6th Cir. 2018) (citations omitted).

In addition, "[a]bsent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Harris v. Ocwen Loan Servicing, LLC*, No. 17-5399, 2017 WL 8791308, at *2 (6th Cir. Nov. 22, 2017) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). "[T]he Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'" *Bauman v. City of Cleveland*, No. 1:04-CV-1757, 2015 WL 893285, at *8 (N.D. Ohio Mar. 3, 2015) (internal quotation marks and citations omitted)). As the First Circuit Court of Appeals has explained:

> [An] [a]ppellant [i]s entitled to a *de novo* review by the district court of the recommendations to which he objected, [but] he [s]s not entitled to a *de novo* review of an argument never raised. The purpose of the Federal Magistrate's Act is to relieve courts of unnecessary work. It would defeat this purpose if the district court was required to hear matters anew on issues never presented to the magistrate. Parties must take before the magistrate, not only their "best shot" but all of their shots.

*Borden v. Sec'y. of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (internal quotation marks and citations omitted).

In conducting its review in accordance with these considerations, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## III. DISCUSSION

In her Objections, the plaintiff acknowledges that she signed the ARC Agreement, but, "after further review," she now objects to the enforcement of that Agreement on, by the court's count, eleven separate grounds:

> (1) that the ARC Agreement is not a binding arbitration agreement but instead offers arbitration as a choice, that is, as an alternative to bringing suit in court;

(2) insofar as the Agreement requires arbitration, it is ambiguous and does not "plainly put the plaintiff on notice of waiver of right to sue in court or waiver of right to trial by jury" (Doc. No. 13, at 2);

(3) the Agreement is not binding because it does not offer any benefit to the employee or an exchange of items of value for consideration;

(4) the Agreement is ambiguous because it uses the terms "Contract" and "Agreement" interchangeably (*id.* at 3);

(5) the Federal Arbitration Act is inapplicable because the transaction does not involve "commerce" (*id.*);

(6) the Agreement is unenforceable because it was not signed by any Hermitage Hall representative;

(7) the Agreement is unconscionable because it lacks mutuality, as it seems to compel arbitration only of the employee's claims but does not identify any claims that the employer might be compelled to arbitrate;

(8) the Agreement is unconscionable insofar as it incorporates the Federal Arbitration Act, which means that the Agreement itself does not incorporate "all of the rules, terms and conditions," such that an "employee [who] truly wishes to arbitrate would not know all of the terms that they are agreeing to" (*id.*);

(9) the plaintiff's "signature on the agreement was obtained by fraud and signed under duress," because the plaintiff was told that her employment was conditioned on her signing the agreement, even though the ARC Agreement itself says that "arbitration is not a mandatory condition of employment" (*id.* at 4);

(10) the Agreement is an unenforceable contract of adhesion; and

(11) Hermitage Hall cannot enforce the Agreement because it breached the Agreement by failing to utilize, or to make available to the plaintiff, the 3-tiered process for resolution of conflict outlined in the Agreement.

In its response, Hermitage Hall argues that: (1) the plaintiff waived her ability to bring most of these arguments by initially conceding that "a valid agreement to arbitrate exists" and that her claims fall within the scope of the agreement; (2) the plaintiff's claims of duress and fraud, going to contract formation, and her claim that she did not understand the agreement fail as a matter of law; and (3) the plaintiff's other claims, largely relating to the interpretation of the contract, are expressly delegated to the arbitrator. (Doc. No. 14.) In her supplement/reply, the

plaintiff largely reiterates the same arguments made in her initial Objections. (Doc. No. 17.)

The court finds that the plaintiff has waived her ability to present any of these arguments to this court, not having presented them to the magistrate judge. *Accord Murr*, 200 F.3d at 902 n.1. Her Objections are overruled on that basis. Moreover, as set forth below, the plaintiff's arguments are substantively without merit.

### A.     The Federal Arbitration Act

The Federal Arbitration Act ("FAA") allows parties to a "contract evidencing a transaction involving commerce" to agree that certain disputes between them arising from such "contract or transaction" will be decided by an arbitrator rather than by a court. 9 U.S.C. § 2. Described by the Supreme Court as the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), Section 2 of the FAA further provides that any such agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section embodies "a liberal federal policy favoring arbitration." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24). The principal purpose of the FAA is to ensure the enforcement of private arbitration agreements according to their terms; the broader purpose of allowing parties to submit grievances to arbitration is to facilitate "efficient, streamlined procedures tailored to the type of dispute" at issue. *Id.* at 344 (citations omitted); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation.").

At the same time, despite this liberal federal policy favoring arbitration agreements,

arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) ("An agreement to arbitrate is fundamentally a matter of consent."). When considering a motion to compel arbitration, a district court must determine, as a threshold matter, if the parties agreed to arbitrate. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019); *Stout*, 228 F.3d at 714. The court must "use state law to assess the existence of an agreement." *GGNSC Louisville*, 932 F.3d at 485 (citations omitted). Generally, "[t]he question of arbitrability is one for the courts unless the parties 'clearly and unmistakably provide otherwise.'" *McGee v. Armstrong*, 941 F.3d 859, 865–66 (6th Cir. 2019) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

"Generally, 'whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide.'" *In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 381 (quoting *Howsam*, 537 U.S. at 84) (some internal quotation marks omitted). However, the parties may instead "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 381–82 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)). Such an agreement, referred to as a "delegation provision," "is simply an additional, antecedent agreement" "to arbitrate a gateway issue," which "the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 382 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). To be effective, a delegation provision must "clearly and unmistakably" show that the parties intended the question of

arbitrability to be decided by the arbitrator. *McGee*, 941 F.3d at 865–66 (quoting *Howsam*, 537 U.S. at 83).

As the Sixth Circuit explained recently,

[a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*. Stated another way, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (*absent a valid provision specifically committing such disputes to an arbitrator*) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement."

*In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 382–83 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297, 299–300 (2010)) (second emphasis added). In other words, whether an arbitration agreement was *formed* is always a question to be resolved by the court (unless conceded by the parties), and whether the arbitration agreement is *enforceable* or covers a particular claim is also typically a question for the court *unless* it has been effectively delegated to the arbitrator.

### B. Contract Formation

Under Tennessee law, "an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 904 (Tenn. Ct. App. 2009) (quoting *Thompson v. Hensley*, 136 S.W.3d 925, 929–30 (Tenn. Ct. App. 2003)). The plaintiff, in responding to the defendant's Motion to Dismiss and Compel Arbitration, initially agreed that an agreement to arbitrate had been formed. She now seeks to walk back that concession, as several of her Objections are, at least arguably, addressed to contract formation rather than contract enforceability, including her claims that the ARC Agreement is not actually a contract (ground

(1)); the Agreement lacks consideration (ground (3)); no agreement was formed because it was not signed by a Hermitage Hall representative (ground (6)); the agreement is not mutual (ground (7)); and the agreement was fraudulently induced (ground (9)).

The court may readily dispense with the first argument. The first paragraph of the ARC Agreement states in relevant part:

> ARC is an agreement to arbitrate disputes in the workplace. ARC is a contract between you, the employee[,] and Hermitage Hall. ARC does not change any other terms and conditions of employment; it is a contract where you and Hermitage Hall agree to resolve any covered legal disputes through mandatory arbitration instead of by way of court or jury trial.

(Doc. No. 41, at 1.) This language clearly and unambiguously manifests an intention to form a contract and to make dispute resolution through arbitration mandatory, not merely one choice among several. This intention is reflected throughout the entirety of the contract. The second and third paragraphs, for example, provide that the Agreement is to be governed by the FAA and that it "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." (*Id.*) Most of the remainder of the Agreement is devoted to explaining the procedure to be followed, and the final paragraph, appearing just before the plaintiff's printed name and signature, states: "This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes." (*Id.* at 5.) The plaintiff claims that the title of the Agreement (by including the word "Alternative") introduces ambiguity and suggests that arbitration is simply an option. This is not so. The title of the Agreement reflects that it is a contract to resolve employment disputes by arbitration rather than through the judicial system. The plaintiff's contention that the ARC Agreement does not constitute an actual contract is without merit.

The plaintiff next argues that no contract was formed because the ARC Agreement was

not supported by adequate consideration. (*See* Doc. No. 13, at 2 ("The agreement fails to meet the definition of a contract as there is no exchange of goods, services or any items of value for consideration. The agreement as written does not offer or list any benefit that the employee cannot obtain thru a court or trial by jury. As written the 'Agreement' is nothing more than an offer for arbitration that Hermitage Hall is trying to use to dupe employees to abandon constitutional rights in exchange for something that has no real value, implied value or any clear benefit.").) This argument fails under Tennessee law, which holds that "[m]utuality of promises is 'ample' consideration for a contract. A mutual promise 'in itself would constitute a sufficient consideration.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (quoting *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001)). Here, the ARC Agreement clearly provides that both parties agree to resolve disputes through arbitration. This mutuality of promises constitutes sufficient consideration.

Similarly, the plaintiff claims that the Agreement is not mutual, because it is "unfairly one-sided" and "appears to only compel arbitration of the employee[']s claim" but does not compel Hermitage Hall "to arbitrate any claims that it may have." (Doc. No. 13, at 3.) Again, the fact that Hermitage Hall, too, is required to arbitrate any claims that the plaintiff might bring against it renders it sufficiently mutual to be enforceable. "[E]mployer and employee were equally obligated to arbitrate those disputes falling within the coverage of the plan. This is enough to ensure mutuality of obligation." *Seawright*, 507 F.3d at 974.

The plaintiff's claim that no agreement was formed because it was not signed by a representative of the defendant is equally fruitless. "[A]rbitration agreements under the FAA need to be written, but not necessarily *signed*." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007). In *Seawright*, the Sixth Circuit upheld the enforceability of an

arbitration agreement where the agreement at issue was distributed to employees in the form of pamphlets notifying employees that "[s]eeking, accepting, or continuing employment with AGF means that you agree to resolve employment related claims against the company or another employee through this process instead of through the court system." *Id.* Moreover, under Tennessee law pertaining to other types of contracts, a party's intent to be bound by a written contract need not necessarily be manifested by a signature. While it is well settled that, "for a contract to be consummated, the parties must mutually assent to the material terms," *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528 (Tenn. 2012), "mutual assent need not be manifested in writing," but "may be manifested, in whole or in part, by the parties' spoken words or by their actions or inactions." *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). Here, there is no dispute that Hermitage Hall offered the ARC Agreement to the plaintiff, manifested its intent to be bound by it by the language of the Agreement itself (*e.g.*, "[The ARC Agreement] is a contract where you and Hermitage Hall agree to resolve any covered legal disputes through mandatory arbitration instead of by way of court or jury trial." (Doc. No. 4-2, at 1)), and its printed name appears on the form Agreement under the word "AGREED" (*id.* at 5). Hermitage Hall manifested its intent to be bound by the Agreement, and the fact that the form contract offered to the plaintiff was not actually signed by a representative of Hermitage Hall is irrelevant.

Finally, the plaintiff claims that her signature on the agreement was "obtained by fraud and signed under duress." (Doc. No. 13, at 3–4.) The court understands the plaintiff to be arguing that no contract was formed because she was fraudulently induced into signing the ARC Agreement. Unless expressly delegated, claims relating to fraud in the making of the arbitration agreement are determined by the court. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

The ARC Agreement does not reflect an express delegation of this claim, and the defendant does not argue otherwise.

In support of her fraudulent inducement argument, the plaintiff asserts that, during her orientation, she was told that she had to sign the ARC Agreement to complete the onboarding process and as a condition of her employment. The plaintiff appears to be arguing that this statement was false, because the Agreement itself provides that agreeing to arbitrate was not a condition of employment. (Doc. No. 13, at 4.) That is, the plaintiff implies that she was not told about this latter provision and that it conflicts with what she was told. Even assuming the truth of the plaintiff's allegation—that she was told only that she had to sign the Agreement as a condition of her employment—this statement would not establish that the plaintiff was fraudulently induced to enter the contract. As the plaintiff herself acknowledges, the ARC Agreement unambiguously states that, by signing the Agreement, the plaintiff did not waive her ability to opt out of it and that her ultimate acceptance of the Agreement was not a "mandatory condition" of employment. (Doc. No. 4-2, at 4.) Section 9 of the Agreement, titled "An Employee's Right to Opt Out of Arbitration," expressly states that "[a]rbitration is not a mandatory condition of Employee's employment at the Company." (*Id.*) The same section describes the process an employee must follow to opt out of arbitration and further states, in bold print, that an employee's failure to affirmatively opt out of the ARC Agreement "within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company." (*Id.*)

In other words, the alleged statement by the employer's representative during the plaintiff's orientation did not actually conflict with the terms of the ARC Agreement. The plaintiff's signature on the Agreement was apparently required during the orientation process,

but the Agreement itself provided notice that she had 30 days within which to opt out of arbitration and explained how to do so. Moreover, regardless of whether she was told about the opt-out provision, when a person signs a contract in Tennessee, that person is presumed to have read its contents. *Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 651 (E.D. Tenn. 2011) (citations omitted). To establish fraud under Tennessee law, a plaintiff must allege, among other elements, reasonable reliance. She cannot do so where simply reading the contract itself would have clarified the issue regarding which she claims to have been defrauded. *See id.* at 650 ("As the Tennessee Court of Appeals has stated, [a]lthough contracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter, a party does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact." (internal quotation marks and citations omitted)); *see also Robert J. Denley Co. v. Neal Smith Constr. Co.*, No. W2006-00629-COA-R3-CV, 2007 WL 1153121, at *6 (Tenn. Ct. App. Apr. 19, 2007) ("There is no duty to disclose a material fact if it was apparent through 'common observation' or if it would have been discoverable through the exercise of ordinary diligence." (citations omitted)).

The court finds that an arbitration agreement was validly formed, as evidenced by the plaintiff's printed and signed name on the ARC Agreement, and that the agreement was supported by consideration and mutual assent. Even if the plaintiff's unsworn assertions in her Objections are considered to be true, the plaintiff has not shown that she was fraudulently induced into entering the Agreement. Even giving the plaintiff every benefit of the doubt, the plaintiff's arguments to the contrary are without merit.

### C. Contract Enforceability, Interpretation and Applicability

Generally, "whether the parties are bound by a given arbitration clause raises a 'question

of arbitrability' for a court to decide." *Howsam*, 537 U.S. at 84. It is well recognized, however, that the parties may "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Known as a "delegation provision," "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. The Sixth Circuit also recognizes, however, that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 69 n.1 (internal quotation marks and brackets omitted).

The Agreement contains the following provision, expressly referring issues of contract interpretation and applicability to the arbitrator:

> Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation *disputes arising out of or relating to interpretation or application of this Agreement*.

(Doc. No. 4-2, at 1 (emphasis added).) By its terms, this delegation provision unmistakably delegates to the arbitrator questions regarding the interpretation of the ARC Agreement and its applicability to the present dispute. Consequently, the plaintiff will have to present to the arbitrator her arguments that the Agreement is ambiguous (grounds (2) and (4)) and that the FAA and, consequently, the Agreement are inapplicable to this dispute (ground (5)).

Finally, although the delegation provision refers the resolution of "all" disputes that

would ordinarily be resolved by a court to an arbitrator, it refers expressly only to "disputes arising out of or relating to interpretation or application of this Agreement." (*Id.*) It does not expressly address objections based on the threshold issue of the enforceability. Because the ARC Agreement does not clearly and unmistakable delegate questions going to the enforceability of the arbitration agreement to the arbitrator, the court finds that these matters are reserved to the court. In this case, that includes the plaintiff's arguments that the ARC Agreement is void or voidable because it is unconscionable. This includes grounds (8) and (10), as itemized above.

In addition, the plaintiff also argues that the defendant waived its ability to enforce the agreement by failing to participate in the "3-tiered" program envisioned by the ARC Agreement (ground (11)). The court construes this argument as largely focused on contract interpretation: what does the reference to the "3-tiered program" in the ARC Agreement mean? Does the contract mandate compliance with the 3-tiered program? As such, it would be a matter for the arbitrator to resolve. However, to the extent the issue raised is one of enforceability reserved for the court, *see, e.g.*, *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008) ("[T]he courts presumptively resolve waiver-through-inconsistent-conduct claims."), the court finds that the "3-tier program for resolution of workplace disputes," to which the ARC Agreement refers in its first two lines, is explicated by a document the plaintiff attached to her supplement/reply. Although she does not explain the source of this document or when she received it, the document is entitled "ARC: Alternative Resolution of Conflicts" and appears intended to explain the arbitration agreement dispute and provide answers to frequently asked questions ("FAQs"). (Doc. No. 17, at 5–6.) This document explains the three "Tiers" referenced in the ARC itself as follows:

> In the first of three Tiers, which is entirely voluntary and not a prerequisite to
> arbitration under ARC, you will continue to bring any workplace concerns

directly to your employer by following the procedures in the Dispute Resolution Policy outlined in your Employee Handbook. This is considered Tier One, and we believe many concerns will be resolved at this level. If Tier One doesn't result in a resolution, you may choose to proceed to Tier Two: mediation. Mediation is a voluntary process. . . . Although we strongly encourage mediation, it is voluntary and not a prerequisite to arbitration under ARC. If a solution to your concerns is not resolved at Tier Two, then you proceed with Tier Three, mandatory arbitration.

(*Id.* at 5; *see also* Doc. No. 4-2, at 1 ("Hermitage Hall . . . has a 3-tier program for resolution of workplace disputes, known as Alternative Resolution of Conflicts ('ARC' or 'Agreement').").) This document goes on to address such questions as what types of disputes are covered by ARC, whether employees can opt out of the program, and how to initiate mediation or arbitration. (Doc. No. 17, at 6.)

In other words, the documentation provided by the plaintiff and the procedure discussed in the ARC Agreement together establish that the informal resolution of disputes through Tier One and Tier Two is not mandatory; only arbitration is mandatory. Thus, to the extent that the plaintiff is arguing that Hermitage Hall waived its ability to pursue arbitration by reneging on some obligation to attempt informal, pre-arbitration resolution of the dispute, such a claim would fail as a matter of law.

The plaintiff claims that the Agreement is "unconscionable" because it incorporates the entirety of the FAA into the Agreement, without spelling out what those terms entail. A closely related issue has very recently been addressed by the Sixth Circuit. In *Blanton v. Domino's Pizza Franchising LLC*, — F.3d —, No. 19-2388, 2020 WL 3263002 (6th Cir. June 16, 2020), the court held that an arbitration agreement's express adoption of the Rules of the American Arbitration Association ("AAA"), which themselves provide that an arbitrator will decide all issues of arbitrability, constituted "clear and unmistakable evidence" that the parties had agreed that the arbitrator would decide questions of arbitrability. *Id.* at *2. In reaching that conclusion,

the court noted that it has "long been settled that parties can incorporate outside documents into a contract if their agreement says as much." *Id.* (citations omitted). In other words, as relevant here, the parties' express incorporation of a federal law—the FAA—into their Agreement does not render the ARC Agreement unduly vague or ambiguous, much less unconscionable. Reference to the FAA put the plaintiff on notice that she was obligated to ascertain what the statute requires.

Finally, the plaintiff contends that the ARC Agreement is unconscionable and unenforceable because it is a contract of "adhesion," characterized by a "gross difference in bargaining power." (Doc. No. 13, at 4.) In support of this argument, the plaintiff claims that, prior to applying to work at Hermitage Hall she had been "underemployed for greater than 12 months." (*Id.*) As a newly licensed nurse, however, she "applied for two nursing positions and received two requests for interviews one of which was at Hermitage Hall." (*Id.*) Because her interview with Hermitage Hall went well and a verbal offer of employment was made, she cancelled the other interview with the second potential employer. Not until she had accepted the job and was undergoing orientation did she learn that she had no option but to sign the ARC Agreement as a condition of employment. (*Id.*) The plaintiff claims that the timing of her introduction to the ARC Agreement created a "gross difference in bargaining power with terms that [she] could not negotiate" and made the contract one of "adhesion." (*Id.*)

The Supreme Court of Tennessee has defined an adhesion contract as being "a standardized form offered on what amounts to a 'take it or leave it' basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product or service by submitting to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). "However, a contract is not adhesive

merely because it is a standardized form offered on a take-it-or-leave-it basis. The last element of adhesion, 'the absence of a meaningful choice for the party occupying the weaker bargaining position,' must also be present." *Seawright*, 507 F.3d at 975 (citing *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004)). In this case, the plaintiff's allegations fail to show the absence of meaningful choice. First and foremost, even if the plaintiff were required to sign the ARC Agreement during the "onboarding" process as a condition of employment, the Agreement itself unmistakably gave her the ability to opt out of it and explained how to do so. Moreover, as set forth above, the plaintiff is presumed to have read the contract she signed. The ARC Agreement explained to the plaintiff that she had options: to abide by the Agreement or to opt out of it within 30 days of signing it.

Even if she had not had the ability to opt out of the Agreement, the plaintiff's allegations do not establish that, if she had declined this condition, she would have been unable to find other suitable employment. *Cooper*, 367 F.3d at 502. To the contrary, she turned down another interview after receiving a verbal employment offer from Hermitage Hall, suggesting that she had other employment options. *Accord Seawright*, 507 F.3d at 976 ("Seawright has presented no evidence that she would be unable to find suitable employment if she had refused to be a party to the arbitration agreement. Thus, we hold that the agreement is not a contract of adhesion.").

Because the plaintiff fails to show either that her job was conditioned on her agreeing to binding arbitration or that, even if it were, she had no other possibility of meaningful employment, the plaintiff cannot establish that the ARC Agreement was a contract of adhesion. In sum, the plaintiff has not presented any basis for concluding that the ARC Agreement is void, voidable, or otherwise unenforceable, as a threshold matter. And her other Objections, addressed to the interpretation of the ARC Agreement, are reserved to the arbitrator.

## IV.    WHETHER TO STAY OR DISMISS

The plaintiff states that she "object[s] to dismissal of claims that the defendant is attempting to compel for arbitration" (Doc. No. 13, at 1), but she does not present any specific argument contesting the magistrate judge's determination that the case should be dismissed without prejudice rather than stayed pending resolution of arbitration proceedings. In the absence of specific objections to some finding or conclusion proposed in the R&R, the court finds no reason not to accept the recommendation that the case be dismissed. *Accord Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (affirming the district court's order compelling arbitration and dismissing the complaint when all claims were referred to arbitration); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (dismissal of action in lieu of stay is proper).

## V.    CONCLUSION

For the reasons set forth herein, the court finds that the plaintiff waived her ability to contest the formation, enforceability, or applicability of the ARC Agreement. Nonetheless, even considered substantively, the plaintiff's various Objections to the defendant's Motion to Dismiss and Compel Arbitration are without merit. The court will overrule the plaintiff's Objections, accept the R&R, and grant the defendant's Motion to Dismiss and Compel Arbitration. All other pending motions will be denied as moot.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge